UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAURENCE V. RUTKOVSKY,

        Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,

        Defendant.

Case No.: 7:18-CV-05233

**LOCAL CIVIL RULE 56.1 RESPONSE IN OPPOSITION TO PLAINTIFF, LAURENCE V. RUTKOVSKY'S STATMENT OF UNDISPUTED MATERIAL FACTS AND DEFENDANT, ALLSTATE INSURANCE COMPANY'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

SKARZYNSKI MARICK & BLACK LLP

Thomas H. Cellilli, III, Esq.
One Battery Park Plaza, 32nd Floor
New York, New York 10004
Tel.: (212) 820-7700
tcellilli@skarzynski.com

*Attorneys for Defendant
Allstate Insurance Company*

Pursuant to Federal Rule of Civil Procedure 56 and United States District for the Sourthern District of New York Local Civil Rule 56.1, Defendant, Allstate Insurance Company ("Allstate"), by and through its attorneys, Skarzynski Marick & Black LLP, respectfully submits this Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("Motion"), as follows.

### DEFENDANT, ALLSTATE INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF, LAURENCE V. RUTKOVSKY'S STATMENT OF UNDISPUTED MATERIAL FACTS

1. Prior to May 1, 2018, defendant Allstate Insurance Company ("Allstate') through its authorized agent, Ralph Bordello, Jr., issued to plaintiff Laurence V. Rutkovsky ("Rutkovsky") a policy of insurance, policy number 078708985 ("subject policy"), insuring Rutkovsky against all risks of loss for the property located at 16 Glen Park Road, Purchase, New York ("subject premises").

   **RESPONSE: Undisputed.**

2. The subject policy was in effect from July 1, 2015 through July 1, 2016.

   **RESPONSE: Undisputed.**

3. On May 21, 2016, the structure of the subject premises was completely destroyed due to fire damage.

   **RESPONSE: Disputed. As indicated in Paragraph 12, below, Plaintiff's residence was damaged by a fire on May 21, 2016, but elements of the structure were salvageable.**

4. The actual cash value ("ACV") of the subject premises was paid by Allstate in the amount of $574,345.00, as the subject policy was in effect on May 21, 2018.

>**RESPONSE: Undisputed.**

5. On May 1, 2018, the subject premises was replaced with a condominium residence ("replacement premises") located at 225 Stanley Avenue, No. 222, Mamaroneck, New York.

>**RESPONSE: Disputed. Defendant disputes the averment above as it constitutes a legal conclusion regarding the term "replaced"—the central dispositive issued in this suit, that the parties ask this Honorable Court to resolve. Defendant objects to the same as it is a legal contention, impermissible to rely on as a factual averment for the purposes of summary judgment, and therefore a violation of Local Civil Rule 56.1. To the extent a response is required to Plaintiff's impermissible legal conclusion, please see Defendant's Memorandum of Law, filed with this Statement, which describes in detail that the Condominium purchased by Plaintiff was not a bona fide "replacement" as required under the Policy.**

6. The purchase of the replacement premises occurred during the subject policy's two-year time limit which expired on May 21, 2018. Rutkovsky paid the purchase price of $718,000.00 incurred transaction costs of $6,649.05 for the replacement premises.

>**RESPONSE: Disputed. Defendant disputes the averment above to the extent that it describes the Condominium as a "replacement." Defendant objects to the same as it is a legal contention, impermissible to rely on as a factual averment for the purposes of summary judgment, and therefore a violation of Local Civil Rule 56.1. To the extent a response is required to Plaintiff's impermissible legal conclusion, please see Defendant's Memorandum of Law,**

3

**filed with this Statement, which describes in detail that the Condominium purchased by Plaintiff was not a bona fide "replacement" as required under the Policy. The timeline in which the Plaintiff purchased the Condominium and the costs associated with that purchase are undisputed.**

7. By purchasing the replacement premises and incurring costs, Rutkovsky was owed the recoverable depreciation under Recoverable Cost Value ("RCV") coverage in the amount of $130,138.22. The amount of the recoverable depreciation was the same amount as separately calculated by both Rutkovsky and Allstate.

**RESPONSE: Disputed. Defendant disputes the averment above as it constitutes a legal conclusion about Plaintiff's entitlements under the Policy, which Defendant, Allstate, denies for Plaintiff's failure to meet a condition precedent to that entitlement—the bona fide replacement of his residence. Defendant objects to the same as it is a legal contention, impermissible to rely on as a factual averment for the purposes of summary judgment, and therefore a violation of Local Civil Rule 56.1. To the extent a response is required to Plaintiff's impermissible legal conclusion, please see Defendant's Memorandum of Law, filed with this Statement, which describes in detail how Plaintiff failed to comply with the "replacement" provision.**

8. Allstate has continued to withhold the agreed-upon recoverable depreciation, despite Rutkovsky's placing the subject premises for sale and subsequently reducing the sales price.

**RESPONSE: Disputed. Defendant disputes the averment above as constitutes a legal conclusion about Plaintiff's entitlements under the Policy, which**

4

> **Defendant, Allstate, denies for Plaintiff's failure to meet a condition precedent to that entitlement—the bona fide replacement of his residence. Defendant objects to the same as it is a legal contention, impermissible to rely on as a factual averment for the purposes of summary judgment, and therefore a violation of Local Civil Rule 56.1. To the extent a response is required to Plaintiff's impermissible legal conclusion, please see Defendant's Memorandum of Law, filed with this Statement, which describes in detail how Plaintiff failed to comply with the "replacement" provision.**
>
> **By way of further response, please see Paragraph 47, below, which details that Plaintiff only listed the property for sale after the expiration of the two year window in which he was permitted to make a claim relative to rebuilding or replacing the property.**

9.      Allstate is obligated under the terms and conditions of the policy to pay plaintiff the recoverable depreciation in the amount of $130,138.22

> **RESPONSE: Disputed. Defendant disputes the averment above as constitutes a legal conclusion about Plaintiff's entitlements under the Policy, which Defendant, Allstate, denies for Plaintiff's failure to meet a condition precedent to that entitlement—the bona fide replacement of his residence. Defendant objects to the same as it is a legal contention, impermissible to rely on as a factual averment for the purposes of summary judgment, and therefore a violation of Local Civil Rule 56.1. To the extent a response is required to Plaintiff's impermissible legal conclusion, please see Defendant's Memorandum of Law, filed with this Statement, which describes in detail why**

5

**Plaintiff is not entitled to the recovery sought.**

## DEFENDANT, ALLSTATE INSURANCE COMPANY'S STATEMENT OF UNDISPUTED MATERIAL FACTS

10. That policy listed certain conditions for determining when and how a loss is compensable, as follows:

> *Section I Conditions*
>
> 5. **How We Pay For A Loss**
>
>    Under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection and Coverage C—Personal Property Protection**, payment for covered loss will be by one or more of the following methods:
>
>    b) Actual Cash Value
>
>    If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.
>
>    **You** may make claim for additional payment as described in paragraph c, and paragraph d if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.
>
>    \*   \*   \*
>
>    **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss.
>
>    Building Structure Reimbursement will not exceed the smallest of the following amounts:
>    1) the replacement cost of the part(s) of the **building structure(s)** for like kind and quality construction, for similar use, on the same premises;
>    2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with

        like kind and quality construction, for similar use, on the same premises; or

3)    the limit of liability applicable to the building structure as shown on the Policy Declarations for **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** . . .

                   \*     \*     \*

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s). Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

                   \*     \*     \*

**Policy Endorsement**
*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

**New York**
**Amendatory Endorsement –AP4729**

This endorsement amends your Deluxe Homeowners Policy and is in addition to all other amendatory endorsements which apply to this policy.

                   \*     \*     \*

V.    In **Section I—Conditions,** under item 5, **How We Pay For A Loss,** the following changes are made:

1)    Sub-item b) Actual Cash Value is replaced by the following:

    b) Actual Cash Value

    If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

7

> **You** may make claim for additional payment as described in paragraph c, and paragraph d if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within two years after the date of the loss.
>
> 2) Under sub-item c) Building Structure Reimbursement. the first paragraph is replaced by the following:
>
> c) Building Structure Reimbursement.
>
> Under **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within two years after the date of the loss. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Loss**, and shall not be payable for any losses excluded in **Section 1—Your Property,** under **Losses We Do Not Cover Under Coverages A and B**, item 24, unless mold, fungus, wet rot, dry rot or bacteria ensues from a covered fire or lightning loss.

(A true and correct copy of said policy is attached hereto as **Exhibit "A"** at page 48-49; 63-65)

11. Plaintiff and his wife purchased the Residence on July 1, 1998 and resided there with their daughter until the date of the Loss. (see the true and correct copy of Plaintiff's Deposition is attached hereto as **Exhibit "B"** at page 23.)

12. On May 21, 2016, the Residence was damaged by a fire. (**Exhibit "B"** at pages 27, 33, 34, and 64.)

13. On July 30, 2016, Plaintiff met a designer at the property to the construction. (A true and correct copy of electronic correspondence between the Plaintiff and Bill Jameson is attached as **Exhibit "D"**.)

14. That month, he also applied for a demolition permit and received a check from Allstate for the ACV of $586,019.12. (A true and correct copy of deposition transcript of Daniel Cippolone, given on behalf of Allstate, is attached hereto as **Exhibit "F"** at pages 15-16.)

15. What remained of Plaintiff's home was demolished at that time. (**Exhibit "B"** at page 33.)

16. Plaintiff retained Fusion Engineering, P.C. to assist with the permitting process in January of 2017 and submitted a Land Development Application dated February 17, 2017. (**Exhibit "B"** at 33-35; A true and correct copy of Plaintiff's Land Development Application is attached hereto as **Exhibit "G"**.)

17. Plaintiff hired Connor Mill-Built Homes ("Connor Mill") to design a new structure he intended to build. (**Exhibit "B"** at page 35.)

18. Connor Mill prepared design drawings to build the home. (**Exhibit "B"** at 38.)

19. Plaintiff paid Connor Mill $25,000.00 for the design drawings on August 4, 2017 which was non-refundable. (**Exhibit "B"** at 59; A true and correct copy of Plaintiff's payment is attached hereto as **Exhibit "H"**.)

20. Plaintiff wanted to redesign the original floorplan of the residence premises and, among other improvements and enhancements, Plaintiff decided to relocate a subgrade garage to the opposite side of the home, above grade. (True and correct copies of photographs of the Residence are attached as **Exhibit "I"** True and correct copies of the construction drawings for the planned rebuild are attached as **Exhibit "J"**.)

21. The new design necessitated relocating the driveway, which would then encroach on a nearby wetland. (**Exhibit "B"** at 47-48.)

22. In order for the design to be approved, he was required to seek a variance. (**Exhibit "B"** at 47-48.)

23. The substantial delay in obtaining the variance would not have been required if Plaintiff had sought to build a structure that conformed to the parameters of the original. (A true and correct copy of electronic correspondence from Beth Evans, PWS is attached hereto as **Exhibit "K"**)

24. Fusion Engineering laid out a proposed construction schedule on September 27, 2017, which called for the house to be set on December 18, 2017. (A true and correct copy of this exchange is attached hereto as **Exhibit "L"**.)

25. Plaintiff's building plans were approved by the Harrison County Architectural Review Board on October 10, 2017. (**Exhibit "B"** at 56.)

26. Subsequently, Plaintiff purchased a condominium located at 225 Stanley Avenue, unit 222, Mamaroneck, New York, on May 1, 2018 (the "Condominium"). (**Exhibit "B"** at 9; 68.)

27. Plaintiff currently lives at the Condominium alone. His wife (the other named insured on the Policy) lives at 27 Haines Boulevard, Portchester, New York. (**Exhibit "B"** at pages 10-11.)

28. After purchasing the Condominium, Plaintiff presented a formal claim for the depreciation holdback on May 8, 2018, just weeks before the claim deadline. (A true and correct copy of Allstate's denial letter is attached hereto as **Exhibit "M"**.)

29. He based this claim on his averment that the Condominium constituted a replacement for the Residence.  (**Exhibit "M"**.)

30. Plaintiff made this claim despite explicit statements by his representative that he purchased the Condominium merely to trigger payment under the policy, as opposed to purchasing it with the intention to remain and reside there. (A true and correct copy of Mr. Kreuter's email is attached hereto as **Exhibit "N"**; A true and correct copy of his letter of representation is attached hereto as **Exhibit "O"**.)

31. Plaintiff admitted as much in his Motion for Summary Judgment, stating "Plaintiff was neither able to secure government approval nor obtain an extension from Allstate of the two-year time limit to rebuild the subject premises (citation omitted). Plaintiff had no other option than to purchase the [Condominium]."  (*See* ECF Dkt. No. 38-11 at page 3).

32. However, neither Plaintiff nor his representative would affirmatively establish his plans for the residence premises. (**Exhibit "N"**.)

Speaking on behalf of Allstate, Attorney Cellilli inquired:

Will you please clarify what Mr. Rutkovksy's intentions are as it relates to the reconstruction project at the home located at 16 Glen Park Road and its relation to the purchase of this condominium?

(**Exhibit "N"**.)

Communicating on behalf of Plaintiff, Mr. Kreuter stated:

Mr. Rukovsky is left with the choice of replacing the lost house with, in this case, a condo purchase.  With that, the remaining insurance recoverability falls to the replacement option rather than the rebuild option.

(**Exhibit "N".**)

Following that response, Attorney Cellilli requested clarification:

Thank you for your reply but I do not believe it answers the question that I have posed. What is your client's intention as it relates to the reconstruction project of the home? Assuming that he purchases the condominium, what does he intend to do with the condominium and what does he intend to do with the reconstruction project of the home?

(**Exhibit "N".**)

However, Mr. Kreuter failed to answer:

The recent questions posed appear to be irrelevant to the issue of the condo purchase and reflect back on the destroyed house at Glen Park.

(**Exhibit "N".**)

Attorney Cellilli inquired again:

Allstate is not prepared to make any payment commitments with regard to a proposed condominium purchase based on the information presented thus far. We do ask again, however, what Mr. Rutkovsky's intentions are with respect to the Glen Park Road property. Does he intend to return to the property? Does he intend to rebuild the property? What is his plan?

(**Exhibit "N".**)

However, Mr. Kreuter responded without clarifying:

So it is abundantly clear, it is Mr. Rutkovsky's intention to acquire a condominium as his replacement personal residence. With respect to the land at Glen Park, he will continue to own it.

(**Exhibit "N".**)

In order to definitively establish Plaintiff's intention, Attorney Cellilli again inquired:

Does Mr. Rutkovsky intend to return to living at his Glen Park Road property at some point? Does he intend to rebuild at this Glen Road property?

(**Exhibit "N"**.)

33. Allstate made numerous attempts to determine if Plaintiff changed his mind in regard to his stated intent to rebuild the Residence, in its efforts to investigate whether the Condominium was a true "replacement" but did not receive a direct response. (**Exhibit "F"** at page 31.)

34. Despite Allstate's requests for information, Plaintiff never advised Allstate that he in fact did not intend to rebuild the Residence at the loss location and that he never told Allstate his plans changed otherwise. (**Exhibit "B"** at page 42.)

35. That is, Plaintiff gave the appearance of attempting to recover the depreciation yet still proceed with rebuilding his home. (**Exhibit "B"** at page 69.)

36. Plaintiff obtained approval to build from the Town of Harrison, after filing suit, and has not repudiated. (**Exhibit "B"** at page 61.)

37. Plaintiff never told representatives of Connor Mill or representatives of Fusion Engineering that he did not intend to rebuild his home on the site, as planned. (**Exhibit "B"** at page 61.)

38. Plaintiff never informed Allstate or the parties involved in the building process that he did not intend to rebuild the residence premises at the loss location. (**Exhibit "B"** at pages 65-66.)

39. Based on the totality of the circumstances, including Plaintiff's completion of substantial steps toward rebuilding the Residence, retention of the property, and Mr. Kreuter's

statements, Allstate determined that Plaintiff had manifested an intent to eventually return to the Residence.  (**Exhibit "N".**)

40. Allstate denied Plaintiff's depreciation holdback claim by correspondence dated May 16, 2018. (**Exhibit "M".**)

41. Plaintiff filed his complaint against Allstate the following day, on May, 17, 2018 in the Supreme Court of the State of New York, County of Westchester, seeking $130,138.22 in damages.  (A true and correct copy of Plaintiff's Complaint is attached hereto as **Exhibit "P".**)

42. Allstate removed the action by way of a Notice of Removal filed on June 11, 2018.  (A true and correct Notice of Removal is attached hereto as **Exhibit "Q".**)

43. After the two-year limitations period past and in the context of this litigation, Plaintiff placed the property for sale.  (**Exhibit "B"** at page 31; 98; A true and correct copy of Plaintiff's listing is attached hereto as **Exhibit "R"**; A true and Correct copy of electronic communications from Plaintiff's realtor evidencing the appropriate price are attached hereto as **Exhibit "S".**)

44. Plaintiff set the price for the residence at $900,000.00, even though he was advised to set it at $500,000.00.  (**Exhibits "R"; "S".**)

45. Plaintiff admitted that he never communicated to Allstate that he had any intention other than to rebuild at the residence premises.  (**Exhibit "B"** at pages 61-66.)

Dated: New York, New York
       July 22, 2019

                    Respectfully submitted,

                    **S**KARZYNSKI MARICK **& B**LACK **LLC**

                    By:   */s/ Thomas H. Cellilli, III*
                        Thomas H. Cellilli, III
                    One Battery Park Plaza, 32nd Floor
                    New York, New York 10004
                    Tel.: (212) 820-7700
                    Email: tcellilli@skarzynski.com
                    *Attorneys for Defendant*
                    *Allstate Insurance Company*