**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LAURENCE V. RUTKOVSKY,

                     Plaintiff,

      v.

ALLSTATE INSURANCE COMPANY,

                   Defendant.

Case No.:  7:18-CV-05233

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF, LAURENCE V. RUTKOVSKY'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT, ALLSTATE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

---

SKARZYNSKI MARICK & BLACK LLP

Thomas H. Cellilli, III, Esq.
One Battery Park Plaza, 32nd Floor
New York, New York 10004
Tel.:  (212) 820-7700
tcellilli@skarzynski.com
*Attorneys for Defendant*
*Allstate Insurance Company*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT……………………………………………………………..1

FACTUAL AND PROCEDURAL BACKGROUND…………………………………………3

ARGUMENT………………………………………………………………………………11

CONCLUSION…………………………………………………………………………..19

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

Cases

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010)………………11

*Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009)…………………………11

*Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)………………………………………11

*State of New York v. Home Indem. Co.*, 66 N.Y. 2d 669, 671 (1985)……………………………..11

*Little v. Blue Cross*, 72 A.D.2d 200, 203 (4th Dep't 1980)………………………………………11

*Sincoff v. Liberty Mut. Fire Ins. Co.*, 11 N.Y. 2d 386 (1962)……………………………………11

*Harrington v. Amica Mutual Insurance Company*, 645 N.Y.S. 2d 221 (4th Dep't 1996)…………12

*Matos v. Peerless Insurance Company*, 2017 WL 444687 (W.D.N.Y. Feb 2, 2017)......…………12

*Sr. Intern. Business Ins. Co. Ltd. v. World Trade Center, et al.*, 445 F. Supp. 2d 320 (S.D.N.Y. 2006)………………………………………………………………………………………………..12

*Alloush v. Nationwide Mutual Fire Insurance Company*, 2008 WL 544698 (N.D.N.Y. Feb 26, 2008)………………………………………………………………………………………………..12

*Chubb & Son Inc v. Consoli*, 283 A.D.2d 297, 298 (N.Y. App. Div. 2001)………………………13

*Nunez v. Allstate Insurance Company*, 604 F.3d 840 (5th Cir. 2010)……………………………..14

*Nicastro v. New York Central Mut. Fire Ins.*, 148 A.D.3d 1737 (4th Dep't 2017)………………17

Defendant, Allstate Insurance Company ("Allstate"), by and through its attorneys, Skarzynski Marick & Black LLP, submits this Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 38) and in Support of Allstate's Motion for Summary Judgment.

## PRELIMINARY STATEMENT

The sole issue of this case is whether Plaintiff is entitled to a depreciation holdback (the difference between the actual cash value and replacement cost) under his homeowner's policy with Allstate after his home was damaged as the result of a fire. Because Plaintiff did not rebuild or replace the residence premises within the two-year time period allowed by the homeowner's policy, he is not. Plaintiff's attempts to circumvent the Policy by purchasing a condominium, a temporary residence until the residence premises was rebuilt, where he had no intent to permanently remain, does not qualify as a replacement as that term is commonly defined and as interpreted by New York common law.

This case arises out of a fire that occurred on May 21, 2016 (the "Loss"). At the time of the Loss, Plaintiff was insured under a policy with Allstate (the "Policy") that entitled him to the actual cash value ("ACV") for damages to the structure. If Plaintiff rebuilt or replaced the home within two years of the date of loss, he could then recover the Replacement Cost Value ("RCV") by which Allstate would make additional payments. This is commonly referred to as the depreciation holdback.

Immediately after the loss, Plaintiff notified Allstate that he intended to rebuild the residence premises. He obtained a demolition permit from the Town of Harrison and removed the debris. In addition, he undertook substantial steps in rebuilding the residence premises, including retaining contractors, engineers and architects as well as applying for and obtaining permits and

1

wetland variances.  However, because Plaintiff sought to build something substantially different from the original (for example, he intended to change the building footprint and relocate the garage triggering the need for a wetland variance), the permitting process took longer than it would have if Plaintiff simply rebuilt a structure similar to the original.  Had Plaintiff rebuilt the property as it was before the fire, there would have been no need for the variance and construction could have been completed within the two-year limitations period.  Instead of building a structure similar structure, he chose to make improvements and redesign the residence premises.

Under the terms of the Policy, Plaintiff had a two-years from the date of the Loss to make a claim for the depreciation holdback.  Once Plaintiff determined that he could not rebuild the redesigned home in that time frame, he attempted to circumvent the policy limitations period by purchasing a condominium and claiming that it would be used as his as his primary residence, serving as a "replacement."  Plaintiff's representative agent told Allstate that the purchase of the condominium was an attempt by Plaintiff to collect the depreciation holdback despite Plaintiff's manifest continued desire to rebuild the redesigned residence premises.  Allstate denied Plaintiff's claim for the depreciation holdback because Plaintiff did not intend to remain in the condominium and intended to rebuild the residence premises.  Plaintiff did not communicate an abandonment of his plan to rebuild during the claim process.  Allstate's denial was premised on the fact that the condominium was not a bona fide replacement for his residence.  Plaintiff's stated intent to rebuild, conduct in taking substantial steps toward rebuilding and failure to repudiate this intent when asked directly by Allstate, demonstrates his intent to complete the building process and eventually return to the residence premises.  Plaintiff's self -serving belated repudiation of this intent after the two-year time period to repair or replace expired and after the filing of this lawsuit should not be countenanced by the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Policy*

At all times relevant hereto, Plaintiff was insured by a policy issued by Allstate, number

078708985 (the "Policy"), to Plaintiff and his wife, with an effective period between July 1, 2015

and July 1, 2016.  (A true and correct copy of said policy is attached hereto as **Exhibit "A."**)

Subject to certain exclusions, the Policy insured Plaintiff against risks of loss and damage to their

residence at 16 Glen Park Road, Purchase, New York (the "Residence").  That policy listed certain

conditions for determining when and how a loss is compensable, as follows:

> ***Section I Conditions***
>
> 5.  **How We Pay For A Loss**
>
>     Under **Coverage A—Dwelling Protection, Coverage B— Other Structures Protection and Coverage C—Personal Property Protection**, payment for covered loss will be by one or more of the following methods:
>
> b)  Actual Cash Value
>
>     If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.
>
>     **You** may make claim for additional payment as described in paragraph c, and paragraph d if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.
>
>                     *        *        *
>
>     **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of

contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1)      the replacement cost of the part(s) of the **building structure(s)** for like kind and quality construction, for similar use, on the same premises;

2)      the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with like kind and quality construction, for similar use, on the same premises; or

3)      the limit of liability applicable to the building structure as shown on the Policy Declarations for **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** . . .

\*     \*     \*

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s). Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

\*     \*     \*

**Policy Endorsement**
***The following endorsement changes your policy. Please read this document carefully and keep it with your policy.***

**New York**
**Amendatory Endorsement –AP4729**

This endorsement amends your Deluxe Homeowners Policy and is in addition to all other amendatory endorsements which apply to this policy.

\*     \*     \*

V.      In **Section I—Conditions,** under item 5, **How We Pay For A Loss,** the following changes are made:

1)      Sub-item b) Actual Cash Value is replaced by the

following:

b) Actual Cash Value

If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c, and paragraph d if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within two years after the date of the loss.

2)    Under sub-item c) Building Structure Reimbursement. the first paragraph is replaced by the following:

c) Building Structure Reimbursement.

Under **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within two years after the date of the loss. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Loss**, and shall not be payable for any losses excluded in **Section 1—Your Property,** under **Losses We Do Not Cover Under Coverages A and B**, item 24, unless mold, fungus, wet rot, dry rot or bacteria ensues from a covered fire or lightning loss.

(Exhibit A at page 48-49; 63-65)

### *The Loss and Remediation Efforts*

Plaintiff and his wife purchased the Residence on July 1, 1998 and resided there with their daughter until the date of the Loss.  (see the true and correct copy of Plaintiff's Deposition is attached hereto as **Exhibit "B"** at page 23.)  On May 21, 2016, the Residence was damaged by a fire.  (**Exhibit "B"** at pages 27, 33, 34, and 64.)  Allstate was notified of the Loss shortly thereafter

and Plaintiff began the process of rebuilding his home.  (**Exhibit "B"** at page 32.)  This included contact with sales representatives at Westchester Modular Homes, Inc.  (A true and correct copy of correspondence between Plaintiff and sales representatives at Westchester Modular Homes is attached as **Exhibit "C"**.)  On July 30, 2016, Plaintiff met a designer at the property to plan how the build would progress.  (A true and correct copy of electronic correspondence between the Plaintiff and Bill Jameson is attached as **Exhibit "D"**.)

Plaintiff paid off his mortgage in full on November 1, 2016.  (A true and correct copy of correspondence from Wells Fargo is attached as **Exhibit "E"**.)  That month, he also applied for a demolition permit and received a check from Allstate for the ACV of $586,019.12.  (A true and correct copy of deposition transcript of Daniel Cippolone, given on behalf of Allstate, is attached hereto as **Exhibit "F"** at pages 15-16.)  What remained of Plaintiff's home was demolished at that time.  (**Exhibit "B"** at page 33.)  Plaintiff retained Fusion Engineering, P.C. to assist with the permitting process in January of 2017 and submitted a Land Development Application dated February 17, 2017.  (**Exhibit "B"** at 33-35; A true and correct copy of Plaintiff's Land Development Application is attached hereto as **Exhibit "G"**.)

Plaintiff hired Connor Mill-Built Homes ("Connor Mill") to design the new structure he intended to build.  (**Exhibit "B"** at page 35.)  Connor Mill prepared design drawings to build the home.  (**Exhibit "B"** at 38.)  Plaintiff paid Connor Mill $25,000.00 for the design drawings on August 4, 2017 which was non-refundable.  (**Exhibit "B"** at 59; A true and correct copy of Plaintiff's payment is attached hereto as **Exhibit "H"**.)

Shortly after acquiring the drawings and commencing the permit process with the Town of Harrison, Plaintiff began to run into delays.  Plaintiff wanted to redesign the original floorplan of the residence premises to locate a subgrade garage to the opposite side of the home.  (True and

correct copies of photographs of the Residence are attached as **Exhibit "I"** True and correct copies of the construction drawings for the planned rebuild are attached as **Exhibit "J"**.)  By design, this necessitated relocating the driveway, which would then encroach on a nearby wetland.  (**Exhibit "B"** at 47-48.)  In order to seek approval for that design, he was required to seek a variance. (**Exhibit "B"** at 47-48.)  The substantial delay in obtaining the variance would not have been required if Plaintiff had sought to build a structure that conformed to the parameters of the original. (A true and correct copy of electronic correspondence from Beth Evans, PWS is attached hereto as **Exhibit "K"**)

Fusion Engineering laid out a proposed construction schedule on September 27, 2017, which called for the house to be set on December 18, 2017.  (A true and correct copy of this exchange is attached hereto as **Exhibit "L"**.)  Plaintiff's building plans were approved by the Harrison County Architectural Review Board on October 10, 2017.  (**Exhibit "B"** at 56.)

Subsequently, Plaintiff purchased a condominium located at 225 Stanley Avenue, unit 222, Mamaroneck, New York, on May 1, 2018 (the "Condominium").  (**Exhibit "B"** at 9; 68.)  Plaintiff currently lives at the Condominium alone.  His wife (the other named insured on the Policy) lives at 27 Haines Boulevard, Portchester, New York.  (**Exhibit "B"** at pages 10-11.).  After purchasing the Condominium, Plaintiff presented a formal claim for the depreciation holdback on May 8, 2018, just weeks before the claim deadline.  (A true and correct copy of Allstate's denial letter is attached hereto as **Exhibit "M"**.)  He based this claim on his averment that the Condominium constituted a replacement for the Residence.  (**Exhibit "M"**.)  Plaintiff made this claim despite explicit statements by his representative that he purchased the Condominium merely to trigger payment under the policy, as opposed to purchasing it with the intention to remain and reside there.

(A true and correct copy of Mr. Kreuter's email is attached hereto as **Exhibit "N"**; A true and correct copy of his letter of representation is attached hereto as **Exhibit "O"**.)

Plaintiff admitted as much in his Motion for Summary Judgment, stating "Plaintiff was neither able to secure government approval nor obtain an extension from Allstate of the Two-year time limit to rebuild the subject premises (citation omitted).  Plaintiff had no other option than to purchase the [Condominium]."  (*See* ECF Dkt. No. 38-11 at page 3).  However, neither Plaintiff nor his representative would affirmatively establish his plans for the residence. (**Exhibit "N"**.)

Speaking on behalf of Allstate, Attorney Cellilli inquired:

Will you please clarify what Mr. Rutkovksy's intentions are as it relates to the reconstruction project at the home located at 16 Glen Park Road and its relation to the purchase of this condominium?

(**Exhibit "N"**.)

Communicating on behalf of Plaintiff, Mr. Kreuter stated:

Mr. Rukovsky is left with the choice of replacing the lost house with, in this case, a condo purchase.  With that, the remaining insurance recoverability falls to the replacement option rather than the rebuild option.

 (**Exhibit "N"**.)

Following that response, Attorney Cellilli requested clarification:

Thank you for your reply but I do not believe it answers the question that I have posed. What is your client's intention as it relates to the reconstruction project of the home? Assuming that he purchases the condominium, what does he intend to do with the condominium and what does he intend to do with the reconstruction project of the home?

(**Exhibit "N"**.)

However, Mr. Kreuter failed to answer:

The recent questions posed appear to be irrelevant to the issue of the condo purchase and reflect back on the destroyed house at Glen Park.

(**Exhibit "N".**)

Attorney Cellilli inquired again:

Allstate is not prepared to make any payment commitments with regard to a proposed condominium purchase based on the information presented thus far.  We do ask again, however, what Mr. Rutkovsky's intentions are with respect to the Glen Park Road property.  Does he intend to return to the property?  Does he intend to rebuild the property?  What is his plan?

(**Exhibit "N".**)

However, Mr. Kreuter responded without clarifying:

So it is abundantly clear, it is Mr. Rutkovsky's intention to acquire a condominium as his replacement personal residence.  With respect to the land at Glen Park, he will continue to own it.

(**Exhibit "N".**)

In order to definitively establish Plaintiff's intention, Attorney Cellilli again inquired:

Does Mr. Rutkovsky intend to return to living at his Glen Park Road property at some point?  Does he intend to rebuild at this Glen Road property?

(**Exhibit "N".**)

No further information about Plaintiff's intention was communicated.  Allstate made numerous attempts to determine if Plaintiff changed his mind in regard to his stated intent to rebuild the Residence, in its efforts to investigate whether the Condominium was a true

"replacement" but did not receive a direct response.  (**Exhibit "F"** at page 31.)  As of the time Plaintiff made his depreciation holdback claim,, Allstate believed Plaintiff still intended to rebuild the Residence on the property.  First and foremost, it was Plaintiff's stated intent to rebuild. Second, Plaintiff's conduct in substantially making preparations to rebuild was consistent with his expressed intent.  Third, despite Allstate's requests for information, Plaintiff never advised Allstate that he in fact did not intend to rebuild the Residence at the loss location and that he never told Allstate his plans changed otherwise.  (**Exhibit "B"** at page 42.)  That is, Plaintiff gave the appearance of attempting to recover the depreciation yet still proceed with rebuilding his home. (**Exhibit "B"** at page 69.)  Plaintiff obtained approval to build after filing suit and has not repudiated.  (**Exhibit "B"** at page 61.)  Plaintiff never told representatives of Connor Mill or representatives of Fusion Engineering that he did not intend to rebuild his home on the site, as planned.  (**Exhibit "B"** at page 61.)  Plaintiff claims to have told Mr. Kreuter of his intent, as well as a friend, Richard Cohen, and his cousin, Amy Heit, but did not inform Allstate or the parties involved in the building process.  (**Exhibit "B"** at pages 65-66.)

Based on the totality of the circumstances, including Plaintiff's completion of substantial steps toward rebuilding the Residence, retention of the property, and Mr. Kreuter's statements, Allstate determined that Plaintiff had manifested an intent to eventually return to the Residence. (**Exhibit "N"**.) Based on that determination, Allstate denied Plaintiff's depreciation holdback claim by correspondence dated May 16, 2018. (**Exhibit "M"**.)

Plaintiff filed his complaint against Allstate the following day, on May, 17, 2018 in the Supreme Court of the State of New York, County of Westchester, seeking $130,138.22 in damages.  (A true and correct copy of Plaintiff's Complaint is attached hereto as **Exhibit "P"**.)

Allstate removed the action by way of a Notice of Removal filed on June 11, 2018.  (A true and correct Notice of Removal is attached hereto as **Exhibit "Q"**.)

After the two-year limitations period past and in the context of this litigation, Plaintiff placed the property for sale at a price exceeding the realistic market value.  (**Exhibit "B"** at page 31; 98; A true and correct copy of Plaintiff's listing is attached hereto as **Exhibit "R"**; A true and Correct copy of electronic communications from Plaintiff's realtor evidencing the appropriate price are attached hereto as **Exhibit "S"**.)  Plaintiff set the price for the residence at $900,000.00, even though he was advised to set it at $500,000.00.  (**Exhibits "R"**; **"S"**.)  He stated that he did not intend to rebuild the home for the first time only in the context of this litigation.  (*See* **Exhibit "B"**)  Despite this contention, he admitted that he never communicated that intent to Allstate.  (**Exhibit "B"** at pages 61-66.)

## ARGUMENT

I.   STANDARD FOR GRANTING A MOTION FOR SUMMARY JUDGMENT

Summary judgment may be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is material if it has bearing on the outcome of the suit and genuine if a reasonable jury could return a verdict for the non-moving party.  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).

Where the non-movant bears the burden of proof, it is sufficient for the movant to point to the lack of evidence.  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).  Conversely, the non-moving party must demonstrate doubt as to the material facts in order to defeat

a Motion for Summary Judgment without relying on conclusory allegations or unsubstantiated speculation.  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

II.     PLAINTIFF'S CLAIM FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF COULD NOT MAKE A VALID depreciation holdback CLAIM WHERE HE MANIFESTED AN INTENTION TO REBUILD

Where an insurance contract is clear and unambiguous, it must be enforced as written. *State of New York v. Home Indem. Co.*, 66 N.Y. 2d 669, 671.  Ambiguities are resolved in favor of the policyholder.  *Little v. Blue Cross*, 72 A.D.2d 200, 203.  An insurer bears the burden of proving that its construction is the only one reasonable.  *Sincoff v. Liberty Mut. Fire Ins. Co.*, 11 N.Y. 2d 386.  New York courts have held that every contract incudes an implied covenant of good faith and fair dealing.  *Kirk La Shelle Co. v. Paul Armstrong Co.*,263 N.Y. 79, 87 (1933).  Insureds also have a duty to mitigate their damages under the policy.  *Klein's Moving & Storage, Inc. v. Westport Ins. Corp.*, 766 N.Y.S.2d 495 (Sup. Ct. Kings Cnty. 2003).

The purpose of homeowners insurance is to indemnify the insured for an actual loss. *Harrington v. Amica Mutual Insurance Company*, 645 N.Y.S. 2d 221, 225 (1996).  Fire insurance policies attempt to put insureds in as good a position as they would have been absent the loss.  *Id.* New York courts interpret insurance policies based on their "plain and ordinary meaning."  *White v. Continental Cas. Co.*, 848 N.Y.S.2d 603 (2007).  Where a policy limits recovery to ACV absent the repair or replacement of an insured's home and premises the recovery of depreciation holdback on a repair or replacement thereof, the insured must actually repair or replace the premises.  *See Harrington*, 645 N.Y.S. 2d at 225.  In a suit for depreciation holdback under the policy, a plaintiff must have sustained a pecuniary loss in connection with replacing the home.  *Id.*  Where no repairs are performed, the ACV is the measure of a plaintiff's damages.  *Id.* at 225.  An insurer may deny

the payment of replacement costs where an insured is not going to replace the home, because then he would profit from the loss. *Id.* at 227 (citing *Hess v. North Pac. Ins. Co.*, 122 Wash 2d.)

A replacement home must perform the same function at another location. *Matos v. Peerless Insurance Company*, 2017 WL 444687 at *11. *Functional similarity* is all that is required to show a new property has replaced the old. *Sr. Intern. Business Ins. Co. Ltd. V. World Trade Center, et al.*, 445 F. Supp. 2d 320, 334 (S.D.N.Y. 2006). Replacement cost coverage requires a substitute structure for the one originally insured. *Alloush v. Nationwide Mutual Fire Insurance Company*, 2008 WL 544698 at *3. Unless and until the repair or replacement is made, the insurer has not breached its obligations by denying depreciation holdback coverage to the insured. *Id.*

Where a principal appoints an agent to make representations on his behalf, statements made by the agent may be imputed to the principal, even when the principal is ignorant thereof and/or the statement works to the principal's detriment. *Chubb & Son Inc v. Consoli*, 283 A.D.2d 297, 298 (N.Y. App. Div. 2001) (citations omitted).

Plaintiff gives the appearance of compliance with the basic requirements of the policy prior to the expiration of the contractually mandated deadline; however, this case does not turn on the facts of Plaintiff's actions but his intent.

Plaintiff's intent is undisputed from the factual record. Mr. Kreuter, speaking on behalf of the Plaintiff, noted the intent in his email exchange: to purchase a property and make a claim under the "replacement" provision because the construction would not be completed in time to make an depreciation holdback claim under the "repair" provision. Neither Plaintiff nor Mr. Kreuter responded to Allstate's requests to provide information on his plans for the Residence. Mr. Kreuter's responses, as evidenced above, rose above unresponsiveness to the level of intentional obfuscation by failing to provide direct answers to numerous requests in writing that he knew to

13

be material to the central issue.  Plaintiff's intent was merely to trigger payment of the depreciation holdback, which he would not have otherwise qualified for.  His intent was not to find a place to live as a functional replacement of his home, as contemplated under the policy providing for depreciation holdback and New York law as a condition precedent.  The Condominium was not for Plaintiff to live at in lieu of the Residence, the function of the Condominium was to serve as a vehicle to collect insurance proceeds. The purchase was blatantly an illusory act meant only to trigger an additional payment provision under the Contract.

Insurance cannot reward profit-seeking behavior, the purpose of insurance is to protect against risk, not to reward gamesmanship.  This type of moral hazard is exactly what the imposition of the replacement provision seeks to prevent.  Even then, had Plaintiff succeeded in the rebuild during the two (2) year time limit, it is not clear he would have qualified for the depreciation holdback—the variance demonstrates that the planned structure was not of like kind and quality as the original.

Plaintiff identified that terms like "bona fide" are not included in the policy descriptions of the conditions precedent to payment of the depreciation holdback.  However, they are premised on the concept of good faith that underlies the entire insurance contract.  As noted above, the purpose of insurance is to put an insured in as good a position as he would have been in had it not been for the Loss.  In this case, that means that the Plaintiff would have a permanent place to live.  However, his motive in purchasing the Condominium was explicitly to trigger the payment of insurance proceeds when it became obvious that he would not be able to collect those proceeds with a pure motive.  This motive makes that purchase functionally distinct from a "bona fide" purchase by an insured merely attempting to replace the home that he has lost.  Plaintiff is precluded from

14

collecting the depreciation holdback because he engaged in this moral hazard instead of seeking to use available insurance proceeds to secure a place to reside.

      a.  <u>FACTUALLY SIMILAR CASES DEMONSTRATE THAT INENT IS ESSENTIAL TO THE DETERMINATION OF A FUNCTIONAL REPLACEMENT</u>

In a case interpreting an identical provision, the insureds were barred from collecting the depreciation holdback of their destroyed home despite purchasing a new one. *See generally Nunez v. Allstate Insurance Company*, 604 F.3d 840 (5th Cir. 2010).  In that case, Allstate insureds, the Nunezes' home in Chalmette, St. Bernard Parish, Louisiana was destroyed by Hurricane Katrina. *Id.* at 843.  Commensurate with their loss, Allstate paid the Nunezes a total of $134,055.49, the limits of their flood policy and contents claims, as well as for wind-related damages and additional living expenses. *Id.* at 843.  Those proceeds were put towards the purchase of a $172,00.00 house in Houston, Texas; however, they retained the Chalmette home and manifested an intention to return someday. *Id.* at 843.  The Nunezes made a claim to Allstate for additional monies under the policy, which Allstate denied since the Nunezes did not repair or replace their Chalmette home. *Id.* at 843.  Under Louisiana law, terms in an insurance contract are given their "prevailing meaning." *Id.* at 844-845. Further, the term "replace" was neither defined in the policy nor case law. Id. at 846.  That court looked to Webster's Third New International Dictionary to define "replace" as "to take the place of: serve as a substitute for or successor of." *Id.* at 846 (quoting Webster's Third New International Dictionary (Merriam-Webster, Inc. 1993)).  With that understanding, the Nunezes' Houston Home could not constitute a replacement under the policy, since they intended to one day repair and return to their Chalmette home. *Id.* at 846.

The *Nunez* case closely mirrors the matters currently before this Court.   Similar to Louisiana law, insurance contracts in New York are interpreted based on their plain meaning. However, unlike the *Nunez* case, the term "replace" has been addressed by New York courts.   So, the issue turns on whether the Condominium serves as a replacement for the Residence by serving the same function.   *Nunez* indicates that the same function is not served where the insured lacks the intention to permanently remain.

Examining the facts of this case based on the totality of the circumstances in Plaintiff's post-Loss remediation efforts, he affirmatively indicated to Allstate that he intended to rebuild on the land and did not rescind even when that when the deadline to collect insurance monies was impending, attempting to collect by triggering a separate condition precedent under the policy, and then listed his property for sale at double the recommended price in order to feign a repudiation of his intent to rebuild.   The Condominium cannot be a successor to the Residence because the Plaintiff took substantial steps to rebuild including meetings with various contracting and engineering personnel, going through variance and permitting processes, and paying money out-of-pocket, then he retained ownership of the Residence.   He has not repudiated that intent by abandoning his efforts to rebuild.   Plaintiff never notified Connor Mill that he abandoned his plans, nor did he notify Fusion Engineering.   He continued to pursue the building permits even after filing suit and now retains a permitted parcel.   Every piece of evidence shows a manifest intent by the Plaintiff to continue the rebuild process.   As did the Nunezes, Plaintiff has a manifest intent to return.   Because of that intent, in addition to what was stated explicitly by Mr. Kreuter, the Condominium cannot serve as a replacement for the Residence.

The Condominium does not serve the same function as the Residence—it is not a place for the Plaintiff to reside indefinitely, but only a temporary dwelling purchased in an attempt to collect

additional monies under the Policy.  Therefore, Allstate was within its rights to deny payment of the depreciation holdback on the basis that Plaintiff intended to return.  Not only was Allstate's conclusion that Plaintiff intended to rebuild reasonable, but it was the only permissible interpretation the insurer could make absent the insured affirmatively disclaiming his avowed course of action.  Allstate was not in a position to infer Plaintiff's intent.  Plaintiff's insurance-seeking motive was stated by Mr. Kreuter and is an additional aggravating factor, in disregard of an insured's duties to mitigate and deal in good faith, over and above the policy disqualifications in *Nunez*.  For these reasons, Plaintiff is not entitled to the recovery he demands under the policy.

III.   PLAINTIFF'S MOTION FOR SUMMARY JUEDGMENT FAILS BECAUSE IT DOES NOT ACCOUNT FOR THE FUNCTIONAL DISSIMILARLITY BETWEEN THE PROPERTIES

Plaintiff premises his argument on the notion that the Plaintiff's intent as to the Residence should not be a matter of concern and relies on a line of New York cases that do not bear on the issues in this case.  (*See* ECF Dkt. No. 38-11 at page 8-11).  Plaintiff looks to *Matos*, *Harrington*, *Alloush*, and *Nicastro v. New York Central Mut. Fire Ins.* to support his position. (*See* ECF Dkt. No. 38-11 at pages 8-11 (citing *Matos*, 2017 WL 444687; *Harrington*, 223 A.D.2d 222; *Nicastro v. New York Central Mut. Fire Ins.*, 148 A.D.3d 1737 (4th Dep't 2017); and *Alloush*, 2008 WL 544698).)

Plaintiff correctly quotes *Matos* for the presumption that an insured "may replace the [subject premises with a property with similar functionality at another location" but misinterprets how the *Matos* ruling applies to the present facts.  (ECF Dkt. No. 38-11 at page 8 (quoting *Matos*, 2017 WL 444687 at *11)).   Replacing the Residence with the Condominium may *appear* functionally identical to the Plaintiff, a residential property for a residential property, but the

17

functionality turns entirely on the question of intent that Plaintiff dismisses out of hand.  New York courts have held that a "replacement" must perform the same function, but have not provided any guidance on how to interpret the term "function."  See *Matos*, 2017 WL 444687.  *Nunez* informs when a "function" is similar in the case of a residential property: it is a functional replacement for an insured to replace a residential property, where he has the intention to remain, with another residential property holding that same intention.  That is not what Plaintiff has done in the matter pending before this Court, as described above.

Similarly, the question addressed in Harrington was whether payment could be made without any costs incurred by the insured.  *Harrington*, 223 A.D.2d 222 at 228.  That is not a factor in the present case.  There is no dispute that the Plaintiff purchased the Condominium, the issue is only what his intent was in doing so, and whether that could support his position that it took the place of the Residence.  Harrington stands only for general principles about the interpretation of these contractual provisions but does not have any further bearing on this case.

Plaintiff also looks to *Nicastro*, which turned on a notice provision.  *Nicastro*, 148 A.D.3d at 1739.  In that case, determination of the matter turned on whether or not that plaintiff had satisfied the requirement to "repair or replace" after making a claim to his insurer for the replacement costs prior to actually completing the alleged replacement purchase.  *Id.*  It is clearly distinguishable from the questions at issue in the present case, where notice to Allstate is only an ancillary issue.

Finally, Plaintiff turns to *Alloush*, as that case also involved an insured who retained ownership of the insured property.  2008 WL 544698 at *3.  Similar to the above, that plaintiff had not attempted to replace the insured premises, expressing only a desire to purchase a single-family

home in New Jersey.  *Id.* at *2.  With that understanding, the Court held for the insurer on that count without delving into the validity of the replacement.  *Id.*

Cases cited by the Plaintiff fail to address the question of how to approach "replacement" when an insured manifested an intent to rebuild, failed to do so, and purchased another property at the end of his "rebuild or replace" window while retaining the original premises.  Plaintiff misunderstands that when Allstate looks to intent and functionality, it seeks to evaluate whether Plaintiff has actually complied with the terms of the policy and the principals underlying the insurance agreement.  Plaintiff's Motion for Summary Judgment asserts that the issue of intent is immaterial to the outcome.  However, relevant case law indicates that the intent is the central dispositive issue.  As the forgoing describes, Plaintiff did not have the requisite intent to replace the Residence and is not entitled to the depreciation holdback.

## CONCLUSION

For the foregoing reasons, Allstate respectfully requests that this Honorable Court enter an order (1) denying Plaintiff, Laurence Rutkovsky's Motion for Summary Judgment (ECF 38); (2) granting Allstate's Motion for Summary Judgment; (3) dismissing Plaintiff's Complaint; and, (4) granting all other relief to which Allstate is entitled.

Dated: New York, New York
       July 22, 2019

Respectfully submitted,

**SKARZYNSKI MARICK & BLACK LLP**


By:  ___*/s/ Thomas H. Cellilli, III*___
       Thomas H. Cellilli, III
One Battery Park Plaza, 32nd Floor
New York, New York 10004
Tel.:  (212) 820-7700
Email: tcellilli@skarzynski.com
*Attorneys for Defendant*
*Allstate Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was duly served on counsel of record this 22

day of July, 2019, via the Court's ECF system:


Craig A. Blumberg, Esq.
The law office of Craig A. Blumberg
15 Maiden Lane, Suite 2005
New York, New York 10038
craig@lawofficecab.com
Attorneys for Plaintiff
Laurence V. Rutkovsky


*/s/ Thomas H. Cellilli, III*
Thomas H. Cellilli, III

21